# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2026

Lyle W. Cayce
Clerk

No. 25-50549

United States of America,

*Plaintiff—Appellee*,

*versus*

Antonio Maurice Wilkerson,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:24-CR-145-3

_____

Before King, Smith, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Antonio Wilkerson pleaded guilty of conspiracy to possess with intent to distribute at least 50 grams of methamphetamine and was sentenced within the advisory guidelines range to 72 months of imprisonment and five years of supervised release. The district court imposed the mandatory and standard conditions adopted by the court and nine "additional" conditions. The additional conditions included two related to mental health treatment. One

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

required Wilkerson to "participate in a mental health treatment program and follow the rules and regulations of that program"; it also directed that "[t]he probation officer, in consultation with the treatment provider, shall supervise participation in the program," and Wilkerson "shall pay the cost of such treatment if financially able." The other condition required Wilkerson to "take all mental health medications that are prescribed by the treating physician."

Wilkerson appeals the imposition of the mental-health conditions. Because the record indicates he has been treated by a behavioral health institution for thirteen years, has abused medication used to treat mental health conditions, and has experienced significant trauma, the district court did not plainly err in imposing the mental health conditions.

## I.

Wilkerson claims that the district court erred in imposing discretionary conditions of supervised release requiring him to participate in a mental health treatment program and to take all mental health medications prescribed to him, as the record is devoid of any evidence that he faces mental health challenges. Because Wilkerson did not challenge those conditions in the district court, this court's review is limited to plain error. *See United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016). To establish plain error, Wilkerson must show a forfeited error that is clear or obvious and that has affected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, this court has the discretion to correct the error but should do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

"A district court has wide discretion in imposing terms and conditions of supervised release." *United States v. Paul*, 274 F.3d 155, 164 (5th Cir. 2001). Under 18 U.S.C. § 3583(d), conditions must be reasonably related to

the relevant 18 U.S.C. § 3553(a) factors, which include the need for the defendant to obtain "medical care[] or other correctional treatment." *Paul*, 274 F.3d at 165 (citation modified) (quoting § 3553(a)(1)–(2)). The conditions may not impose any "greater deprivation of liberty than is reasonably necessary" to achieve that goal. *Id.*; *see* §§ 3583(d)(2), 3553(a)(2)(D). Additionally, the conditions must be consistent with relevant policy statements issued by the Sentencing Commission. § 3583(d)(3); *United States v. Caravayo*, 809 F.3d 269, 273 n.2 (5th Cir. 2015).

The relevant policy statement recommends the imposition of a condition requiring the defendant to participate in a mental health treatment program "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment." U.S.S.G. § 5D1.3(d)(5), p.s. (2024).[1] Appellate courts "have consistently required district courts to set forth factual findings to justify special [supervised release] conditions." *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014) (internal quotation marks and citation omitted). "[I]f the court doesn't provide reasons[,] or if its reasons are unclear, we may independently review the record for evidence that could justify a special condition." *United States v. Bree*, 927 F.3d 856, 860 (5th Cir. 2019).

As Wilkerson correctly asserts, the district court did not make express factual findings justifying the imposition of the mental health treatment conditions, instead addressing the conditions of supervision on the whole as serving the purpose of "facilitating your reintegration into society, . . . educating you, helping you, [and] monitoring your compliance." Therefore, the question is whether the district court's reasoning in imposing the two conditions

---

[1] The 2024 version of the Guidelines was in effect at the time of Wilkerson's sentencing. Under the current version, the relevant policy statement is found at U.S.S.G. § 5D1.3(b)(3)(E), p.s. (2025).

can be supported by the record.

## II.

The controlling rule states that "a mental-health special condition should not be imposed absent 'record evidence indicating that [the defendant] has a questionable mental health history or a particular diagnosis requiring mental health treatment.'" *Bree*, 927 F.3d at 860 (quoting *Gordon*, 838 F.3d at 604). Wilkerson relies primarily on *United States v. Alvarez*, 880 F.3d 236 (5th Cir. 2018), and its progeny to establish clear error, but the *Alvarez* line of cases can be distinguished.

*Alvarez* held that it was plain error to impose mental health conditions where there was no evidence to suggest that Alvarez needed mental health treatment aside from the fact that she suffered trauma and abuse in the past. *Id.* at 241. More specifically, the court said the "evidence of abuse and trauma here is not enough for us to infer the district court's rationale in imposing this mental health special condition." *Id.* Likewise, in *Bree*, 927 F.3d at 860–61, the court found it was plain error to impose the mental health special condition because substance abuse, "[b]y itself . . . doesn't justify a mental-health condition," and a suicide attempt that predated the offense by forty years was insufficient to satisfy *Gordon*'s standard.

The facts here differ in that the record contains a series of facts, including those mentioned in *Alvarez* and *Bree*, that collectively indicate that Wilkerson has a questionable mental health history. Neither *Alvarez* nor *Bree* excluded the possibility that trauma, abuse, or substance use may be relevant for a court's determining whether the record supports the defendant's having a questionable mental health history. Instead, they stand for the proposition that those facts, without more, are insufficient to justify a mental-health condition.

Wilkerson experienced trauma from a young age, as attested to by

both the presentence report ("PSR") and his family members. He witnessed physical, mental, and drug abuse between his mother and father; his father died while he was a teenager; his mother was frequently incarcerated and neglected raising him and his siblings, leading him to make "life-altering survival decisions." Wilkerson also abused substances, including Xanax, which is used, when prescribed, as a medication to treat mental health issues. Even if neither of those facts was in the record, the PSR indicated that Wilkerson had been under the care of Heart of Texas Behavioral Health Network ("HOTBHN") since 2013, though no diagnoses were noted in their records. This factor alone is likely sufficient to qualify Wilkerson as having a questionable mental health history, given that he's been treated by a behavioral health institution for thirteen years. When Wilkerson's HOTBHN history is considered alongside the history of abusing Xanax and his history of trauma, there is more than sufficient record evidence to indicate a questionable mental health history and to justify the special condition.

Wilkerson's assertions to the contrary are insufficient. He points to the PSR's statement that he denied any past or present mental or emotional health diagnoses and that there "is no information to indicate otherwise" to suggest that there is no record evidence of his questionable mental health history, meaning that his time with HOTBHN is irrelevant. A close reading of the PSR indicates otherwise. The PSR reflects only that Wilkerson has never been diagnosed with a mental health ailment, which is consistent with HOTBHN records. At most, the PSR indicates that there are no treatment plans in the HOTBHN records, not that there had been no mental health treatment at HOTBHN.

The standard laid out in *Gordon* explicitly did not require a diagnosis but only a questionable mental health history. That requirement, by definition, must recognize that an accumulation of facts can support a district

court's mental health findings even if there's been no diagnosis.[2]  This is the situation here.  The record supports that Wilkerson was under the care of a behavioral health provider for thirteen years, abused prescription drugs that are typically prescribed for mental health problems, and experienced significant trauma earlier in life.  Those facts come together to support a finding of a questionable mental health history.

His similar claim that HOTBHN treatment must have been for non-mental health reasons inverts the plain-error burden by attempting to interpret the PSR in a light most favorable to Wilkerson when he has the burden to demonstrate plain error.  That is especially troublesome where the PSR included the information concerning HOTBHN in the mental and emotional health section of the PSR and not the substance-abuse portion of the PSR.  On those facts, there is no plain error.[3]

## III.

Even if Wilkerson showed plain error, we would decline to exercise our discretion under the fourth prong of plain error because imposition of the conditions does not "seriously affect the fairness, integrity or public reputation of judicial proceedings."  *Puckett*, 556 U.S. at 135 (citation modified).  First, the mental health conditions are modifiable.  Although that is never dispositive by itself, it does weigh against exercising our discretion.  *See Alvarez*, 880 F.3d at 242.  Second, unlike the situation in *Alvarez*, the PSR

---

[2] *See United States v. Soto*, 854 F. App'x 635, 637 (5th Cir. 2021) (per curiam) (finding a questionable mental health history where defendant had experienced abuse as a child and had suicidal thoughts at one point in adulthood); *see also United States v. Rocha*, 732 F. App'x 291, 295 (5th Cir. 2018) (per curiam).

[3] *See United States v. Garcia Toscano*, No. 22-40370, 2023 WL 3409036, at *1 (5th Cir. May 12, 2023) (per curiam) (unpublished) (finding no clear error where relevant cases were distinguishable on the facts and there were insufficient record facts to support conclusion that "her history did not reflect a need for treatment").

specifically recommended imposing a mental health special condition and contained information suggesting Wilkerson had been engaged in some form of mental health treatment.

Furthermore, the PSR specifically states that the "public would benefit more from Mr. Wilkerson's participation in classes and programs that would help him be a supportive father to his children and a productive member of society." A comprehensive package of sentencing conditions that are explicitly directed toward Wilkerson's requested end, as explained by the district court, does not implicate the concerns of the fourth prong in the same way that occurred in *Alvarez* and *Bree* because Wilkerson was on notice of what conditions the PSR sought to apply and suggested that they were amenable to him.

There being no plain error, the judgment of sentence is AFFIRMED.